UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 4:22-cr-154 |
| | : | |
| Plaintiff, | : | OPINION & ORDER |
| | : | [Resolving Doc. 44, 49, 55 |
| v. | : | Related Doc. 48, 56, 57] |
| | : | |
| MICHAEL W. BURNS, | : | |
| | : | |
| Defendant. | : | |
| | : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

From October 4-5, 2022, Defendant Michael W. Burns stood trial before a jury on three counts. Count 1 charged Burns with violating 18 U.S.C. §§111(a) and 111(b) by using a deadly weapon to assault, resist, impede, or interfere with an officer of the United States who was engaged in official duties. Count 2 charged Burns with being a felon in possession of a firearm in violation of 18 U.S.C. §§922(g)(1) and 924(a)(2). Count 3 charged Burns with Possession and Discharge of a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. §§924(c)(1)(A)(i) and (c)(1)(A)(iii).

Burns admitted the government's claims except that Burns said his possessed firearm discharged accidentally. Burns claimed he did not intentionally discharge the firearm to stop law enforcement from arresting him. In support of this argument, Burns showed evidence that the firearm discharged only once; the discharge involved a blank round; and no evidence showed any projectiles discharged in law enforcement's direction.

After consultation with the parties and without objection from either party, the Court instructed the jury on a lesser-included Count 1 alternative offense if the government was unable to prove that Burns intentionally discharged the firearm. With the lesser-

Case No. 4:22-cr-154
GWIN, J.

included instruction, Court told the jury that if it found Burns not guilty of the greater offense or was unable to reach a verdict on the greater offense, it should consider whether Burns was guilty of impeding federal law enforcement officers without intentionally using a deadly weapon.

Count 3 charged Burns with using a firearm "in furtherance of a crime of violence" in violation of 18 U.S.C §§924(c)(1)(A)(i) and (c)(1)(A)(iii).  But the lesser-included Count 1 offense of impeding federal law enforcement officers without intentionally using a deadly weapon was not a crime of violence. So, if the government failed to prove Burns guilty of the greater offense, it could not prove him guilty of Count 3.

On October 5, 2022, the jury returned guilty verdicts against Defendant Burns on Count 1's lesser charge and on Count 2. It left blank the verdict forms for Count 1's greater charge and for Count 3.  Government's counsel raised no objection and made no request that the jury needed to unanimously find Burns guilty or not guilty of Count 1's greater offense or Count 3.

That same day, the Court entered a verdict of guilty as to the lesser-included offense for Count 1 and for Count 2 and dismissed Count 3 with prejudice.

A day later, on October 6, 2022, the government filed a motion for reconsideration of the Court's dismissal of Count 3. The next day, October 7, 2022, the government filed a supplemental motion for reconsideration on Count 3 and a motion for mistrial on Count 1's greater charge. Defendant filed oppositions to both motions and also timely renewed his Rule 29 motion for acquittal as to Count 3.

Case No. 4:22-cr-154
GWIN, J.

For the reasons described below, the Court **DENIES** the government's motions for mistrial as to Count 1 and for reconsideration as to Count 3, and accordingly **DENIES** Defendant's renewed motion for acquittal as moot.

## I. Background

### A. Defendant's Charges[1]

On February 1, 2022, United States Marshals surrounded Defendant Michael W. Burns's hotel room. The Marshals sought to take Burns into custody pursuant to a valid arrest warrant.[2]

At the time, Burns had a gun in his hotel room. After the Marshals knocked and announced their presence, they used the hotel's master key to begin to open the hotel room door.[3] As the Marshals pushed the door open, the engaged chain-lock on the door pulled taut, preventing the door from opening more than a few inches.[4] As the door caught on the chain, Burns's gun discharged once.[5]

Defendant Burns has consistently claimed the gun only discharged a single blank round. The evidence supported that claim. Defendant told law enforcement that the gun had fired a blank;[6] he testified at trial that the gun discharged a blank;[7] and law enforcement never found a bullet hole in the hotel room or its vicinity.[8]

---

[1] The Court's summary of the events leading up to Defendant Burns's indictment are based on party stipulations and trial testimony from both Defendant and the government's witnesses. The Court notes in its summary any facts which are contested.
[2] Oct. 4, 2022 Tr. Transcript at Line 2413-2424. Note: because neither party ordered a final transcript for the Oct. 4, 2022 trial proceedings, the Court's citations to that transcript refer to its personal copy of the rough live transcription, which the Court saved at the end of each day of trial.
[3] *Id.* at Line 1905-1908.
[4] *Id.* at Line 1913-1922.
[5] *Id.* at Line 2626-2631.
[6] *Id.* at Line 2931.
[7] *Id.* at Line 3966-3979.
[8] *Id.* at Line 2251-2254.

Case No. 4:22-cr-154
GWIN, J.

Upon hearing the gun discharge, the Marshals retreated and called for backup. Burns did not make any statement, threatening or otherwise, to the Marshals before the gun fired.[9]

For approximately 20 minutes after the Marshals first knocked on his door, Burns remained in his locked hotel room. During that time, Burns made suicidal statements to the Marshals about preferring to die rather than return to jail.[10] Burns testified that he also spent those 20 minutes calling various loved ones.[11] Ultimately, Burns opened the hotel room door and surrendered to the Marshals.[12]

The United States argued at trial that Burns had intentionally used his gun to resist, impede, or intimidate law enforcement. Defendant Burns argued that he discharged the gun by accident while trying to hide it, and that he surrendered peacefully.  Burns never contested the felon in possession of a firearm charge.

On March 31, 2022, a grand jury indicted Burns on three counts: using a deadly weapon to resist, assault, impede, or interfere with an officer engaged in his duties; being a felon in possession of a firearm; and using a deadly weapon in furtherance of a crime of violence.

### B.  Relevant Trial Proceedings

Although Defendant entered not guilty pleas on all three counts, the crux of his defense was his argument that he had discharged the gun accidentally. In other words, Defendant presented essentially no defense to his Count 2 charge of being a felon in possession of a weapon. Indeed, Defendant testified that it was because he knew he was not

---

[9] Oct. 4, 2022 Tr. Transcript at Line 2623-2625; 2654-2656.
[10] *Id.* at Line 2019-2028.
[11] *Id.* at Line 4029-4041.
[12] *Id.* at Line 2508-2519.

Case No. 4:22-cr-154
GWIN, J.

supposed to have a gun that he rushed to hide the firearm, leading to its claimed accidental discharge.[13]

Thus, both parties knew that the key issue for the jury to decide would be whether Defendant had intentionally used his gun to assault, resist, impede, or interfere with an officer (Count 1) and consequently used a deadly weapon in furtherance of a crime of violence (Count 3).

Because the whole trial tipped on whether Burns intentionally used the firearm to impede his arrest, the Court determined it should issue both greater- and lesser-offense instructions for Count 1. In the Court's instructions, the elements for the greater offense of Count 1 were described as:

> First: That on or about February 1, 2022, the defendant forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with a federal officer who was then engaged in the performance of his or her official duty or on account of the performance of official duties;
>
> Second: That the defendant did such act[s] intentionally; and
>
> Third: That the defendant used a deadly or dangerous weapon in forcibly assaulting, resisting, intimidating, or interfering with federal law enforcement officers.[14] (Emphasis added.)

---

[13] Oct. 4, 2022 Tr. Transcript at Line 3929-3934.
[14] Jury Instructions, Doc. 45 at PageID #215-216.

Case No. 4:22-cr-154
GWIN, J.

In conformity with Sixth Circuit pattern jury instructions, the Court then gave a lesser-included offense instruction that read:

> If you find the defendant not guilty of Count 1 charge of using a firearm to assault, impede, resist or intimidate federal law enforcement under 18 U.S.C. § 111(a)(1) and (b) or if you cannot agree on a verdict as to that charge, then you must go on to consider whether the government has proved the lesser charge of forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with federal law enforcement officers while such officers were engaged in the performance of official duties under 18 U.S.C. § 111(a)(1).
>
> The difference between these two crimes is that to convict the defendant of the lesser charge, the government does not have to prove that defendant used a deadly weapon. The deadly weapon is a necessary element of the greater charge, but not the lesser charge.
>
> For you to find the defendant guilty of the lesser charge, the government must prove each of the following elements beyond a reasonable doubt:
>
> First: That on or about February 1, 2022, the defendant forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with a federal officer who was then engaged in the

Case No. 4:22-cr-154
GWIN, J.

> performance of his or her official duty or on account of the
>
> performance of official duties;
>
> Second: that he did so intentionally.[15] (Emphasis added.)

Finally, the instructions described the elements of Count 3 as[16]:

> First: That on February 1, 2022, Defendant committed
>
> Count 1 by using a deadly weapon to forcibly assault, resist,
>
> oppose, impede, intimidate, or interfere with a federal officer.
>
> Count 1 is classified as a crime of violence which may be
>
> prosecuted in a court of the United States.
>
> Second: That on February 1, 2022, the defendant
>
> knowingly used or carried a firearm.
>
> Third: That the use or carrying of the firearm was during
>
> and in relation to the crime charged in Count 1.[17]

Thus, the jury instructions made clear that a conviction on Count 3 required that government proved that Defendant was also guilty of the greater offense of Count 1.[18]

Before instructing the jury, the Court provided both the government and the defendant copies of the jury instructions and draft verdict forms and held a conference at which each party had an opportunity to object.[19] The government raised no relevant

---

[15] Jury Instructions, Doc. 45 at PageID #: 217.

[16] The instructions for Count 2 are omitted as not relevant to either the government's motions for reconsideration and mistrial or the defense's renewed motion for acquittal.

[17] Jury Instructions, Doc. 45 at PageID #: 220-221.

[18] The government objected at conference to this instruction, arguing that a conviction on Count 1's lesser charge would also be sufficient to show that defendant had committed a "crime of violence." The Court overruled this objection. *See United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 921 (9th Cir. 2014) (holding that § 111(a) is not categorically a crime of violence because it is possible to violate 111(a) without committing the conduct described in the statutory definition of a "crime of violence."); *United States v. Latimore*, 2019 WL 4242535, at *3 (N.D. Ohio Sept. 6, 2019) (vacating defendant's 18 U.S.C. § 924(c)(1) conviction for use of a firearm in the commission of a crime of violence because "a violation of section 111(a) is not a crime of violence.").

[19] Oct 5, 2022 Tr. Transcript, Doc. 53 at PageID #: 317-322.

- 7 -

Case No. 4:22-cr-154
GWIN, J.

objections at the conference. The Court proceeded with instructing the jury, and at 10:35 a.m. on October 5, 2022, the jury began deliberations.[20]

After deliberating for a substantial period, the jury sent a written question. The jury asked the Court what would happen if it were unable to agree on a verdict on the greater offense in Count 1.[21]

The Court conferenced with the parties and suggested responding with the same language already given in the original final instruction.  Neither the defendant nor the government objected to the Court instructing the jury that "if after making reasonable effort to reach unanimous agreement on Count 1 you find that you cannot reach a unanimous verdict then you must go on to consider the lesser charge."[22]

At approximately 3:36 p.m., the jury informed the Court that it had reached a verdict and asked what it should do next. The Court returned the jury to the courtroom, where the Court asked the jury foreperson whether the jury had reached a verdict on either the greater or lesser offense in Count 1. The foreperson replied that it had. The Court asked if the jury had reached a verdict on Count 2. The jury had. The Court asked if the jury had completed Count 3. The jury replied that it had not.[23] The Court then read aloud the jury verdicts, which unanimously convicted Defendant Burns of the lesser offense of Count 1 and of Count 2, and which were silent as to the greater charge of Count 1 and Count 3. At the government's request, the Court then polled the jury on Count 1.[24]

---

[20] Oct 5, 2022 Tr. Transcript, Doc. 53 at PageID #: 376.
[21] *Id.* at PageID #: 382-383.
[22] *Id.* at PageID #: 383.
[23] *Id.* at PageID #: 383-384. The government inaccurately states that the jury told the Court it had not "considered" Count 3. (Gov. Supp. Mot. for Reconsideration, Doc. 49 at PageID #: 24). Rather, the jury told the Court that it had not "completed" Count 3. The jury's silence as to Count 3 is consistent with its decision to convict Defendant Burns only of the lesser of Count 1. *See Green v. United States*, 355 U.S. 184 (1957), discussed at greater length *infra* at Section II.A.2.ii.
[24] Oct 5, 2022 Tr. Transcript, Doc. 53 at PageID #: 384-387.

Case No. 4:22-cr-154
GWIN, J.

The government made no objection to the jury poll and declined to review the verdict forms.[25] The Court then dismissed the jury.

At no point did the government object to the jury having left the verdict form for the greater charge of Count 1 blank. And it was only after the jury had been discharged and a further recess that the government finally informed the Court that it had "one small concern" about the jury not filling out the verdict form for Count 3.[26] When the Court admonished the government for failing to raise its concern while the Court could still rectify any error, the government agreed that it should have said something sooner.[27]

The Court entered the verdicts, including its dismissal of Count 3 with prejudice.[28] A day later, on October 6, 2022, the government filed a motion for reconsideration of the Court's dismissal of Count 3.[29] The next day, on October 7, 2022, the government filed a supplemental motion for reconsideration on Count 3 and a motion for mistrial on the greater charge of Count 1.[30] On October 19, 2022, Defendant renewed his Rule 29 motion for Acquittal as to Count 3.[31]

---

[25] *Id.* at PageID #: 385-386.
[26] *Id.* at PageID #: 390.
[27] *Id.*
[28] Doc. 43.
[29] Doc. 44.
[30] Doc. 49.
[31] Doc. 55.

Case No. 4:22-cr-154
GWIN, J.

## II.    Discussion

The government moves for mistrial on Count 1's greater charge and for

reconsideration on the dismissal of Count 3. The Court finds that the government forfeited

its objections and that Double Jeopardy separately stops retrial of either charge.

### A.    Motion for Mistrial on Count 1's Greater Charge

#### 1.    Legal Standard for Motion for Mistrial

"Once jeopardy attaches, prosecution of a defendant before a jury other than the

original jury, [...], is barred unless (1) there is a manifest necessity for a mistrial or (2) the

defendant either requests or consents to a mistrial."[32] "[A] a trial judge should declare a

mistrial based on manifest necessity 'with the greatest caution, under urgent circumstances,

and for very plain and obvious causes.'"[33] There is no mechanical definition of what

constitutes manifest necessity—the trial court must take into account the circumstances of

the case and determine whether there is a "high degree of necessity" of declaring mistrial.[34]

#### 2.    Analysis

##### i.    Forfeiture

Fed. R. Crim. P. 51(b) permits a party to "preserve a claim of error by informing the

court—when the court ruling or order is made or sought—of the action the party wishes the

court to take, or the party's objection to the court's action and the grounds for that

objection."

The purpose of this rule is to "provide[] the district court with an opportunity to

address the error in the first instance."[35] As such, a "party may not stand idly by, watching

---

[32] *Johnson v. Karnes*, 198 F.3d 589, 594 (6th Cir. 1999) (citation omitted).
[33] *Id.* (quoting *United States v. Perez*, 22 U.S. 579, 580 (1824)).
[34] *Id.*
[35] *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004).

- 10 -

Case No. 4:22-cr-154
GWIN, J.

the proceedings and allowing the Court to commit error of which he subsequently

complains."[36] "Objections are not insurance against an unfavorable result but must

ordinarily be raised while there is still time to rectify the asserted error."[37]

Here, the government did not object. The Court circulated proposed jury

instructions at the end of the first trial day and went through the lesser-included offense

instruction.  Indeed, whether Burns accidentally or intentionally discharged the gun was

the trial's central issue.  Both parties possessed the proposed instructions overnight and

neither raised any relevant objection to the instructions when the case reconvened.[38]

The government knew that its case for the greater charge of Count 1 hinged on

whether it could prove beyond a reasonable doubt that Defendant used his gun

intentionally. It knew that its case for Count 3 hinged on proving the greater charge of

Count 1. But the government did not object to a lesser-offense instruction on Count 1. The

government did not object when the Court instructed the jury that it could proceed to

Count 1's lesser charge if it could not agree on the greater charge. The government did not

object to the Court's reiterating that instruction after the jury asked what would happen if it

could not agree on the greater charge. The government did not object when the Court read

the jury's verdict and announced that the forms for Count 1's greater charge and for Count

3 had been left blank.

The government did not make any objection regarding the Count 1 instruction or

the receipt of the Count 1 verdict. And it did not move for mistrial until two days after the

---

[36] *McNeely v. United States*, 353 F.2d 913, 917 (8th Cir. 1965). *See also United States v. Curry,* 358 F.2d 904, 912 (2d Cir. 1965) (A party "may not remain silent in hopes that the district court will fall into reversible error where the possible error could have been passed upon and cured, if need be, by a properly timed objection.").
[37] *United States v. Woodner*, 317 F.2d 649, 651–52 (2d Cir. 1963).
[38] The Court did, at government's request, tweak the language on the Count 1 lesser offense verdict form to add the list of verbs (e.g. resist, assault, impede) included in 18 U.S.C. 111(a). This request was not relevant to the issues at hand.

- 11 -

Case No. 4:22-cr-154
GWIN, J.

Court discharged the jury and entered the verdicts. Instead, the government stood "idly

by," and now it seeks a mistrial as "insurance" against an unfavorable result. But a "motion

for mistrial made substantially after the fact is an inadequate substitute for a timely

objection."[39]

### ii.  Double Jeopardy

Even if the government had timely objected to the jury's silence as to Count 1's

greater charge, the jury was empowered to leave the verdict form blank. And Double

Jeopardy now bars retrial of that greater offense.

The Double Jeopardy Clause exists because "the State with all its resources and

power should not be allowed to make repeated attempts to convict an individual for an

alleged offense, thereby subjecting him to embarrassment, expense and ordeal and

compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing

the possibility that even though innocent he may be found guilty."[40]

Accordingly, when a jury is "given a full opportunity to return a verdict" on a

greater charge and instead convicts only on a lesser charge, Double Jeopardy bars retrying

the greater charge even when the jury's verdict is silent as to that greater charge.[41] In *Green

v. United States*, a jury found Defendant Green guilty of the lesser charge of second-degree

murder but left its verdict silent as to the greater first-degree murder charge against him.[42]

---

[39] *United States v. Brown*, 757 F.3d 183, 191 (4th Cir. 2014).
[40] *Green v. United States*, 355 U.S. 184, 187-188 (1957)).
[41] *Price v. Georgia*, 398 U.S. 323, 329 (1970) (quoting *Green*, 355 U.S. at 191).
[42] *Green*, 355 U.S. at 186.

Case No. 4:22-cr-154
GWIN, J.

The Supreme Court found that the state violated Double Jeopardy by retrying Green for first-degree murder.[43]

Importantly, the Supreme Court emphasized in *Green* that its decision need not rest solely on the assumption that the jury acquitted Green of first-degree murder. It was enough that the jury had been given a full opportunity to return a guilty verdict and had instead convicted on the lesser charge. Defendant's "jeopardy […] came to an end when the jury was discharged."[44]

Here, the jury had a full opportunity to consider the greater offense before it returned a conviction on the lesser. It heard all the evidence. It received full instruction. Its questions were answered. It deliberated for five hours.[45] It chose to convict only on the lesser offense.

In sum, the government chose not to object to any of the jury instructions or to the verdicts read until after defendant had been subjected to a full trial and the jury had been discharged. But after failing to secure its desired outcome, the government now seeks a second bite at the apple. The Constitution will not permit it that chance.

### B. Motion for Reconsideration of Count 3

#### 1. Legal Standard for Motion for Reconsideration

"The Federal Rules of Criminal Procedure do not provide for a motion to reconsider, but common law doctrine recognizes such motions."[46] Thus, courts in this Circuit typically evaluate motions for reconsideration "under the same standards applicable to a civil motion to alter or amend judgment under Rule 59(e) of the Federal Rules of Civil

---

[43] *Id.*
[44] *Id.*
[45] Oct. 5, 2022 Tr. Transcript, Doc. 54 at PageID #:376, 383.
[46] *United States v. Cornell*, 2008 WL 4449028, at *1 (N.D. Ohio Sept. 26, 2008).

- 13 -

Case No. 4:22-cr-154
GWIN, J.

Procedure."[47] "Following the established Rule 59(e) standard, a court grants a motion for reconsideration for one of four reasons: an intervening change in controlling law, evidence not previously available has become available, it is necessary to correct a clear error of law, or to prevent manifest injustice."[48]

### 2. Analysis

The government argues that the Court should reconsider its dismissal of Count 3 because juries are permitted to render inconsistent verdicts. In other words, the jury could have acquitted Defendant Burns of Count 1 entirely and still have convicted him of Count 3.[49] The Court now agrees that a single jury deciding multiple, related charges is permitted to render inconsistent verdicts.[50] It is significantly less clear whether the government can seek a retrial with the express purpose of securing an inconsistent verdict. In any case, the government again failed to object in time for the Court to correct any error of law, and Double Jeopardy now stops the government from retrying Defendant Burns.

### i. Forfeiture

The forfeiture analysis applied above to Count 1 also applies here. The government argues that when the jury told the Court that it had not completed Count 3,[51] the Court should either have permitted the jury more time to deliberate or declared the jury hung and ordered a mistrial. But when the jury asked the Court what would happen if it could not agree on the greater Count 1 charge, the government did not ask the Court to instruct the jury that it

---

[47] *Id. See also United States v. Moore*, 2020 WL 3643470, at *1 (N.D. Ohio July 6, 2020).
[48] *Id.* at *2.
[49] Gov. Supp. Mot. for Reconsideration, Doc. 49 at PageID #: 250-51.
[50] *See, e.g., United States v. Powell*, 469 U.S. 57 (1984).
[51] Again, the government has inaccurately stated that the jury told the Court that it had not "considered" Count 3. This is not supported in the record.

- 14 -

Case No. 4:22-cr-154
GWIN, J.

should still proceed to Count 3. And when the Court read the verdicts, the government again

did not object to the jury leaving the Count 3 verdict form blank. Nor did it move for mistrial.

Notably, the government already had notice from the jury-instruction conference

that Count 3 required the firearm be used in a violent felony and had notice that the Count

1 lesser offense was not a violent felony.  At the conference, the government argued that

for Count 3, the Court should instruct the jury that a conviction on either the greater or the

lesser of Count 1 would prove that Defendant had committed a crime of violence.[52]

However, the Court pointed to significant and almost unanimous authority that a violation

of 18 U.S.C. §111(a) alone is not a crime of violence.[53] The Court overruled the

government's objection.

At that point, the government knew that if the jury moved to the Count 1 lesser

offense without convicting on the greater offense, the government's only hope for securing

a Count 3 conviction would be for the jury to return inconsistent verdicts. The government

should have been on high alert to any indication that the jury would not convict on the

greater offense. It should have been ready to move for supplemental instructions on Count

3—or even to move for mistrial. Instead, the government waited until remedial or

---

[52] Oct. 5, 2022 Tr. Transcript, Doc. 53 at PageID #: 319.

[53] *See United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 921 (9th Cir. 2014) (holding that § 111(a) is not categorically a crime of violence because it is possible to violate 111(a) without committing the conduct described in the statutory definition of a "crime of violence."); *United States v. Latimore*, 2019 WL 4242535, at *3 (N.D. Ohio Sept. 6, 2019) (vacating defendant's 18 U.S.C. § 924(c)(1) conviction for use of a firearm in the commission of a crime of violence because "a violation of section 111(a) is not a crime of violence."). *See also United States v. Ama*, 684 F. App'x 736, 742 (10th Cir. 2017) (holding that "a felony conviction under § 111(a) is not a violent felony" under the Armed Career Criminal Act.)

Case No. 4:22-cr-154
GWIN, J.

supplemental instructions were no longer possible before raising its "small concern" about

Count 3.

The fact that the government forfeited its objections is crucial to the Double

Jeopardy analysis below. "Double-jeopardy principles have never been thought to bar the

*immediate* repair of a genuine error in the announcement of an acquittal[.]"[54] "[A]

prosecutor can seek to persuade the court to correct its legal error before it rules, or at least

before the proceedings move forward."[55]

In *Smith v. Massachusetts*, a district court had granted the defendant a directed

verdict of acquittal based on the court's erroneous understanding of what proof the

government was required to show for its firearms charge. The government belatedly

brought the error to the court's attention, and the court agreed to reverse its previous

acquittal ruling. Nevertheless, the Supreme Court found that the acquittal had already

become final and that Double Jeopardy barred reversal. The Supreme Court noted that if

the prosecutor had only "sought a short continuance at the time of the acquittal motion, the

matter could have been resolved satisfactorily before petitioner went forward with his

case."[56]

Here, the government could have immediately brought the possibility of any

inconsistent verdicts to the Court's attention and asked the Court to instruct the jury to

complete Count 3. But the government failed to make any objection or motion either at the

time the Court instructed the jury or before the Court discharged the jury, and Double

Jeopardy now prohibits retrying Defendant Burns.

---

[54] *Smith v. Massachusetts*, 543 U.S. 462, 474 (2005) (emphasis added).
[55] *Id.*
[56] *Id.* at 474-475.

- 16 -

Case No. 4:22-cr-154
GWIN, J.

## ii. Double Jeopardy

After the jury failed to convict Defendant Burns of Count 1's greater charge, the Court determined that the government had presented insufficient evidence to prove beyond a reasonable doubt the first element of Count 3, i.e. that Defendant had committed a crime of violence. While the government showed evidence that Burns impeded or resisted federal authorities, that violation only became a violent offense if the government showed that Burns intentionally used a deadly weapon.  So, it dismissed Count 3 with prejudice.

The Double Jeopardy Clause "prohibits reexamination of a court-decreed acquittal to the same extent it prohibits reexamination of an acquittal by jury verdict."[57] Notably, even a "mistaken acquittal is an acquittal nonetheless," and cannot be reviewed "on error or otherwise, without putting a defendant twice in jeopardy, and thereby violating the Constitution." [58] An acquittal "precludes retrial even if it is premised upon […] a mistaken understanding of what evidence would suffice to sustain a conviction[.]"

Here, the Court's dismissal with prejudice constitutes a final and unreviewable acquittal, even if it was not entered under the term "directed verdict." An acquittal "encompass[es] any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense," in contrast with "procedural dismissals" which rule only on

---

[57] *Smith*, 543 U.S. at 467. The only exception occurs when a jury convicts a defendant but a court sets aside the verdict and enters a judgment of acquittal. *Id.* Such was not the case here.
[58] *Evans v. Michigan*, 568 U.S. 313, 318 (2013) (citations omitted).

Case No. 4:22-cr-154
GWIN, J.

"questions that are unrelated to factual guilt or innocence," such as "an error with the

indictment."[59]

Thus, the government's own inaction at trial caused Defendant's acquittal on Count

3 to become final and Double Jeopardy now bars his retrial.

### III.    Conclusion

Accordingly, the Court **DENIES** the government's motion for reconsideration on

Count 3 and its motion for mistrial on the greater offense of Count 1. Because the Court finds

that Defendant Burns has been acquitted of Count 3, it also **DENIES** Defendant's renewed

motion for acquittal on Count 3 as moot.


IT IS SO ORDERED.


Dated: November 2, 2022                          _s/      James S. Gwin_____
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE

---

[59] *Id.* at 318-19.